UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

SIMON W. FORD,                        )
                                      )
                Plaintiff,            )
                                      )
        v.                            )  CASE NO. 4:07-cv-0017-DFH-WGH
                                      )
ARGOSY CASINO LAWRENCEBURG,           )
                                      )
                Defendant.            )

ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This case presents a question that arises because of the ambivalent relationship between state legislatures and the casino gambling industry: whether a riverboat casino that is indefinitely moored to the shore is a "vessel in navigation" for purposes of the federal Jones Act.  The answer is no.  *Howard v. Southern Illinois Riverboat Casino Cruises, Inc.*, 364 F.3d 854 (7th Cir. 2004) (reversing denial of summary judgment on the same question).

By way of background for this issue, in 1993, the Indiana legislature overrode the Governor's veto and authorized a limited number of casinos in Indiana, as long as the gambling was conducted on riverboats.  See Indiana P.L. 277-1993(ss), § 124.  Under the 1993 legislation, gambling was permitted only during offshore cruises, so the riverboats actually had to sail on the Ohio River or Lake Michigan, respectively.  Ind. Code § 4-33-9-2 (1993, enacted by § 124 of P.L.

277-1993(ss)). The Indiana legislature eventually amended the casino laws effective August 1, 2002 to allow "dockside" gambling while the boats were moored and thus no longer had to incur the expense and wear and tear of actually sailing. See Ind. Code § 4-33-6-21 and 4-33-9-2 (2002, enacted and amended by §§ 15 and 16 of P.L. 1992-2002(ss)). The riverboats were quickly moored to the shore to reduce operating expenses and to enable patrons to come and go as they pleased rather than having to board for the duration of a particular cruise.

In this case, plaintiff Simon W. Ford was employed as a slot machine technician by defendant Indiana Gaming Company, L.P. ("IGC," named in the caption as Argosy Casino Lawrenceburg). Ford was injured in April 2004 on the riverboat casino as he was attempting to repair a slot machine. Ford seeks damages under the federal Jones Act and other maritime doctrines for injuries he sustained.

IGC contends that its riverboat casino was moored for an indefinite time at the time of the injury and therefore was not a "vessel in navigation" as required to invoke the Jones Act and other maritime doctrines. On this basis, IGC has moved for summary judgment on all of Ford's claims. As explained below, the undisputed facts show that the indefinitely moored riverboat casino where Ford was injured was not a "vessel in navigation" at the time of the injury. The court grants summary judgment in favor of IGC on all of Ford's claims.

-2-

*Summary Judgment Standard*

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, the court should grant summary judgment if and only if the record shows there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); *Pafford v. Herman,* 148 F.3d 658, 665 (7th Cir. 1998).

On a motion for summary judgment, the moving party must first come forward and identify those portions of the pleadings, discovery disclosures, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which the party believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met the threshold burden of supporting the motion, the opposing party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e).

In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to and draw all reasonable inferences in favor of the non-moving party, in this case, Mr. Ford. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Haefling v. United States Parcel Serv.*,

169 F.3d 494, 497 (7th Cir. 1999). However, the existence of "some alleged factual dispute between the parties," or "some metaphysical doubt" does not create a genuine issue of fact. *Piscione v. Ernst & Young, L.L.P.,* 171 F.3d 527, 532 (7th Cir. 1999). The proper inquiry is whether a trier of fact could reasonably find for the party opposing the motion with respect to the particular issue. See, *e.g., Vitug v. Multistate Tax Comm'n,* 88 F.3d 506, 512 (7th Cir. 1996).

### Undisputed Facts

In light of these standards, the following facts are not necessarily all true in an objective sense; they are either undisputed or represent the evidence of disputed facts in the light reasonably most favorable to plaintiff as the non-moving party. On the date of the injury, April 28, 2004, plaintiff Ford was employed by IGC as a slot technician aboard the *M/V Argosy VI.* Ford Aff. ¶ 1. The overwhelming majority of Ford's workday as a slot technician was spent aboard the *Argosy VI. Id.*, ¶ 11.

The *Argosy VI* had previously operated as a casino while regularly navigating the Ohio River (though typically in very short trips away from the dock to comply with state law while minimizing operating expenses). See Johnson Aff. (2007) ¶ 3. In 2002, the Indiana legislature voted to allow riverboat casinos to conduct gaming operations while permanently moored to the riverbank. *Id.*, ¶ 4. From August 1, 2002 through the date of Ford's injury in 2004, the *Argosy VI* had been

permanently and indefinitely moored outside the Argosy Hotel in Lawrenceburg, Indiana.  *Id.*, ¶¶ 6, 9.  During that time, the *Argosy VI* had not been used (and was not intended to be used) to transport people or goods on the water, nor had the *Argosy VI* served any transportation function.  *Id.*, ¶¶ 7-8.  The *Argosy VI*'s primary operations were related to gaming.  *Id.*, ¶ 11.

At the time of Ford's injury, however, the *Argosy VI* had a full marine crew, including deck hands and engineers.  Ford Aff. ¶ 4.  The *Argosy VI* and her marine crew were regularly inspected by the United States Coast Guard.  *Id.*, ¶¶ 6-8.  Ford was personally responsible for preparing the tech room in the water craft's hold for these inspections.  *Id.*, ¶ 12.  Members of the marine crew of the *M/V Argosy VI* were trained and prepared to handle potential marine emergencies, such as breaking away from dock, fire, man overboard, rough waters, or sinking.  *Id.*, ¶¶ 5-8.

The Coast Guard had certified the *Argosy VI* as seaworthy.  *Id.*, ¶ 15.  If need be, the *Argosy VI* was capable of commencing navigation within several minutes.  *Id.*, ¶ 9.  The *Argosy VI* was also capable of complementing her shore-based utilities with on-craft power generation.  *Id.*, ¶ 14.

Following Ford's injury, IGC completed U.S. Coast Guard Form CG-2692, "Report of Marine Accident, Injury or Death."  On that two-page form, IGC referred to the *Argosy VI* as a "passenger" craft, listed Mr. Ford as a member of the

"crew," and listed IGC's industry as "passenger vessel (casino)."  Dkt. No. 30, Ex. C.

IGC is currently constructing a new casino that will probably replace the *Argosy VI* outside the Argosy Hotel in Lawrenceburg.  Ford Aff. ¶ 10; Johnson Aff. (2008) ¶ 9.  Following construction of this new casino, the *Argosy VI* may navigate under her own power to a new location.  Ford Aff. ¶ 10; Johnson Aff. (2008) ¶ 9.

*Discussion*

Plaintiff Ford seeks relief under the Jones Act and the maritime personal injury doctrines of maintenance, cure, and unseaworthiness.  The Jones Act limits its relief to one who is a "seaman" at the time of injury.  46 U.S.C. § 30104; see *Howard v. Southern Illinois Riverboat Casino Cruises, Inc.*, 364 F.3d 854, 856 (7th Cir. 2004).  The doctrines of maintenance and cure likewise require Ford to satisfy the Jones Act's definition of "seaman."  *Hall v. Diamond M. Co.*, 732 F.2d 1246, 1248 (5th Cir. 1984).  Similarly, the doctrine of unseaworthiness applies only to seamen.  *Mason v. Alaskan Observers, Inc.*, 2003 WL 23181008, at *2 (W.D. Wash. Aug. 29, 2003), citing *Kermarec v. Companie Generalie Transatlantique*, 358 U.S. 625, 629 (1959) (holding that guest of seaman was not entitled to protection of doctrine of unseaworthiness because he was not a seaman).  Both parties focus their briefs on the question whether Ford was a "Jones Act seaman," Def. Br. at

4, 8-9; Pl. Br. at 4, but all three of Ford's claims depend on whether, at the time of his injury, he was a seaman within the meaning of the Jones Act.[1]

The Jones Act does not define "seaman," so the courts have filled in the meaning of that critical term. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 355 (1995). To prove seaman status under the Jones Act, Mr. Ford has the burden of proving both (1) that his duties contributed to the function of the "vessel in navigation" or to the accomplishment of her mission, and (2) that he had a substantial employment-related connection to a "vessel in navigation." *Id.* at 368. A water craft need not be actively or primarily involved in transportation to qualify as a "vessel in navigation." *Stewart v. Dutra Construction Co.*, 543 U.S. 481, 496 (2005). A ship long docked, anchored, or moored can be cut loose and sailed. *Id.* The key inquiry is "whether the water craft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one." *Id.* Although the issue of seaman status (including the subsidiary question of "vessel in navigation") is generally a mixed question of law and fact reserved to the jury, summary judgment must be granted where the facts and law will reasonably support only one conclusion. *Harbor Tug and Barge Co. v. Papai*, 520 U.S. 548, 554 (1997).[2]

---

[1]The Jones Act was previously codified at 46 U.S.C. § 688 and 46 U.S.C. Appx. § 688.

[2]When discussing the applicability of maritime law, courts sometimes refer simply to a "vessel" instead of a "vessel in navigation." See, *e.g.*, *Chandris*, 515 U.S. at 368. For present purposes, the key question when defining a water craft as a "vessel" is whether that water craft was used for or was capable of transportation over water, or whether it had lost its status by having been
(continued...)

Applying the Supreme Court's definition of seaman in *Chandris*, the undisputed facts show that gaming was the primary function or mission of the *Argosy VI* at the time of the incident.  It is also undisputed that Ford's duties as a slot technician gave him a substantial employment-related connection to the *Argosy VI* and contributed to the gaming mission of the casino.  The parties disagree about the "vessel in navigation" element of both prongs of the definition.

In dicta, the Supreme Court has referred to an indefinitely moored riverboat casino as an example of a water craft that is not a "vessel in navigation."  *Stewart*, 543 U.S. at 494 (holding that dredge was a "vessel" for purposes of Longshore and Harbor Workers' Compensation Act), citing *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 570 (5th Cir. 1995).  The Seventh Circuit held as a matter of law in *Howard v. Southern Illinois Riverboat Casino Cruises* that an indefinitely moored riverboat casino was not a "vessel in navigation", 364 F.3d at 857 (reversing denial of summary judgment on the issue).  Magistrate Judge Hussmann followed *Howard* to grant summary judgment and held that another indefinitely moored riverboat casino along the Indiana shore of the Ohio River was not a "vessel in navigation."  *Earls v. Belterra Resort, Indiana, LLC*, 439 F. Supp. 2d 884 (S.D. Ind. 2006).  Judge Bertelsman granted summary judgment in a case involving the same casino where plaintiff Ford was injured, holding that the

---

[2](...continued)
withdrawn from those uses for an extended period of time.  See *Stewart*, 543 U.S. at 495-96.  This entry uses the term "vessel in navigation."

*Argosy VI* was not a "vessel in navigation" as of August 18, 2002, just 17 days after the beginning of dockside gambling. *Watson v. Indiana Gaming Co.*, 337 F. Supp. 2d 951, 955 (E.D. Ky. 2004) (card dealer was not a "seaman," and could not recover on maritime personal injury theories, because the indefinitely moored riverboat casino was not a "vessel in navigation").[3]

Plaintiff Ford argues that some facts distinguish his case from these adverse authorities and create a genuine issue of material fact for trial. He emphasizes the facts showing that the casino employed a crew trained and able to sail it and could be physically ready to sail in a matter of minutes. He also emphasizes the Coast Guard's oversight, which treated the casino as a passenger vessel and involved regular inspections and the like. The problem is that in *Howard*, as in this case, the casino had a crew, was treated as a passenger vessel by the Coast Guard, and was capable of unmooring and sailing in a matter of minutes. 364 F.3d at 855-56. Those facts did not avoid summary judgment.

Ford argues most vigorously that the future prospect that the casino will sail again when it is replaced shows that it should still be deemed a vessel in navigation. The court is not persuaded. The casino in *Howard* had in fact sailed from Illinois to Texas a little more than a year after the injuries in question. 364 F.3d at 855. Ford's theory that the future prospect that the *Argosy VI* will

_____

[3]This court agrees with Judge Hussmann that the Supreme Court's decision in *Stewart* did not impair the precedential force of the Seventh Circuit's decision in *Howard*. See *Earls*, 439 F. Supp. 2d at 889-90.

someday sail again therefore cannot distinguish this case from *Howard*. See also *Earls*, 439 F. Supp. 2d at 886 (following *Howard* and holding that indefinitely moored riverboat casino with full marine crew, Coast Guard registrations, and ability to cruise on short notice was not a "vessel in navigation").

IGC admits that it is constructing a new riverboat casino for the Lawrenceburg location. Ford contends in his affidavit that this new casino will replace the *Argosy VI*, which will then navigate under her own power to a new location. IGC denies that any final plans have been reached with regard to the *Argosy VI*. See Johnson Aff. (2008) ¶ 9.

The Supreme Court explained in *Stewart* that a ship and its crew "do not move in and out of Jones Act coverage depending on whether the ship is at anchor, docked for loading or unloading, or berthed for minor repairs, in the same way that ships taken permanently out of the water as a practical matter do not remain vessels merely because of the remote possibility that they may one day sail again." 543 U.S. at 494. Water craft can and do shift, however, between being "vessels in navigation" and mere "vessels" based upon fundamental changes to their actual or intended use. See *Stewart*, 543 U.S. at 493-94; see also *Chandris*, 515 U.S. at 374 (major renovations can remove a water craft from being a "vessel in navigation"). "The question remains in all cases whether the watercraft's use 'as a means of transportation on water' is a practical possibility or merely a theoretical one." *Stewart*, 543 U.S. at 496. The question here is whether the *M/V*

-10-

*Argosy VI* was a "vessel in navigation" on the date of Ford's injury, not whether it might have become a "vessel in navigation" on the filing date of Ford's affidavit more than three years later. See *Howard*, 364 F.3d at 858 (casino was not vessel in navigation at time of plaintiffs' injuries, although it had sailed under its own power from Illinois to Texas a year after the injuries).

Ford has not come forward with evidence that would show that future sailing had become a "practical possibility" instead of a "theoretical one" when he was injured. See *Stewart*, 543 U.S. at 496. He has not offered evidence as to when construction of the new riverboat casino began, when construction is expected to be completed, how far in advance companies such as IGC plan new construction, how often indefinitely moored riverboat casinos such as the *Argosy VI* are replaced, or anything else that might enable a reasonable jury to find that future sailing was a "practical possibility" as of the date of Ford's injury in 2004. The prospect that the *Argosy VI* will be moved at some time still in the future, when the new riverboat casino is completed, is not enough to show that the casino was a vessel in navigation in 2004.[4]

*Conclusion*

---

[4]The court need not decide in this case whether or when any such plan for future movement might transform an indefinitely moored casino back into a "vessel in navigation." See generally *Howard*, 364 F.3d at 857-58 (noting that courts applying test will need to examine current use of vessel and whether the owner intends to move the structure on a regular basis and the length of time the structure has remained stationary).

The court hereby GRANTS summary judgment to IGC as to all of plaintiff Ford's claims.  The court will enter final judgment accordingly.


So ordered.

Date: March 24, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Megan Cochran Ahrens
SCHROEDER MAUDNRELL BARBIERE & POWERS
mahrens@schroederlaw.com

Craig Wynn Church
HOEY & FARINA
cchurch@hoeyfarina.com

Todd M. Powers
SCHROEDER MAUNDRELL BARBIERE POWERS
tpowers@schroederlaw.com